L. N. SUDDRETH, FOR AND ON BEHALF OF HIMSELF AND ALL OTHER OWNERS AND OPERATORS OF TAXICABS IN THE CITY OF CHARLOTTE, N. C., WHO DESIRE TO MAKE THEMSELVES A PARTY TO THIS ACTION, v. THE CITY OF CHARLOTTE, A MUNICIPAL CORPORATION; WALTER F. ANDERSON, AS CHIEF OF POLICE OF THE CITY OF CHARLOTTE, N. C.; H. H. BAXTER, MAYOR OF THE CITY OF CHARLOTTE; R. W. FLACK, MANAGER OF THE CITY OF CHARLOTTE, AND ALL LAW ENFORCEMENT OFFICERS IN THE SAID CITY OF CHARLOTTE, N. C.

(Filed 24 November, 1943.)

### 1. Constitutional Law § 8: Municipal Corporations § 36—

The business of carrying passengers for hire is a privilege, the licensing, regulation, and control of which is peculiarly and exclusively a legislative prerogative. So is the power to regulate the use of public roads and streets. The General Assembly in the exercise of this police power may provide-for the licensing of taxicabs and regulate their use on public streets, or it may, in its discretion, delegate this authority to the several municipalities. It has adopted the latter course. Public Laws 1943, ch. 639, sec. 2; Michie's Code, sec. 2787, subsecs. (7), (11), and (36); Public-Local Laws 1939, ch. 366, secs. 31, 32.

### 2. Municipal Corporations §§ 36, 39—

Where the Legislature has vested in a city council the power to regulate, license, and control motor vehicles for hire, the municipality may name such terms and conditions as it sees fit to impose for the privilege of transacting such business. There is a broad presumption in favor of the validity of an ordinance undertaking to exercise such power, and he who attacks it must show affirmatively that it is not expressly authorized by statute, or that it is unreasonable and oppressive.

### 3. Constitutional Law § 8: Municipal Corporations § 36—

Municipalities may classify persons according to their business and apply different rules to different classes without violating constitutional rights, State or Federal. The discriminations which invalidate an ordinance are those where persons engaged in the same business are subjected to different restrictions or are held entitled to different privileges under the same conditions.

### 4. Same—

The fact that operators of taxicabs will suffer pecuniary injury from the enforcement of ordinances regulating such business, or that such operators may be unable to comply with the terms of a regulatory ordinance, and so will be compelled to abandon operation of their vehicles, does not establish the unreasonableness or invalidity of the ordinance.

### 5. Injunction § 9—

Ordinarily, injunction does not lie to restrain the enforcement of an alleged invalid municipal ordinance.

### 6. Appeal and Error §§ 2, 4—

Where plaintiff has selected an improper remedy and dismissal will not end the controversy, this Court, in the exercise of its discretion, may

express an opinion on the merits of the exceptive assignments of error and finally decide the matter.

APPEAL by plaintiffs from *Armstrong, J.,* at October Term, 1943, of MECKLENBURG. Affirmed.

Civil action to restrain the enforcement of a city ordinance.

On 8 September, 1943, the governing authorities of the city of Charlotte enacted an ordinance to regulate and control driving of taxicabs and the parking of taxicabs in the city of Charlotte. Section 8 thereof reads as follows:

"Section 8. DEPOT OR TERMINAL REQUIRED. All taxicabs which are operated within the corporate limits of the City of Charlotte, North Carolina, or between said corporate limits to points, not incorporated, within a radius of five miles of said corporate limits, shall have a depot, or terminal, on private property and shall not be permitted to use the public streets except for the purpose of transporting, loading and unloading of passengers and their baggage."

The plaintiff, L. N. Suddreth, a taxicab operator within the city, instituted this action to test the validity of Section 8. One W. E. McQuay, also an owner and operator of a taxicab within Charlotte, intervened as a party plaintiff.

On application of plaintiffs, a temporary restraining order and rule to show cause was issued by Bobbitt, Judge, returnable before the judge presiding in the district. When the cause came on to be heard upon the rule to show cause it was stipulated by the parties "that His Honor, Frank M. Armstrong, Judge, duly assigned and holding the courts in the Fourteenth Judicial District, can hear this case in the absence of a jury, and find the facts, and enter a judgment thereon, and a jury trial is specifically waived."

Pursuant to said stipulation the court heard the evidence, found the facts, and concluded that: (1) the ordinance is valid; (2) the plaintiffs have an adequate and effectual remedy at law; and (3) the damages sustained by plaintiffs are speculative and not irreparable. It thereupon entered judgment dissolving and dismissing the temporary restraining order. Plaintiffs excepted and appealed. Upon appeal being noted further order was entered continuing the temporary injunction until the final hearing in the Supreme Court.

*McDougle & Ervin for plaintiffs, appellants.*
*Tillett & Campbell for defendants, appellees.*

BARNHILL, J. The business of carrying passengers for hire is a privilege, the licensing, regulation, and control of which is peculiarly

and exclusively a legislative prerogative. So is the power to regulate the use of public roads and streets. The General Assembly in the exercise of this police power may provide for the licensing of taxicabs and regulate their use on public streets, or it may, in its discretion, delegate this authority to the several municipalities. 37 Am. Jur., 534, sec. 21; Anno. 144 A. L. R., 1120.

It has adopted the latter course. Section 2, chapter 639, Public Laws of 1943, reads as follows:

"That cities and towns shall have the power to license, regulate, and control drivers and operators of taxicabs within the city or town limits and to regulate and control operators of taxicabs operating between the city or town to points, not incorporated, within a radius of five miles of said city or town." ·

This power is also conferred on the city of Charlotte, by express provisions contained in its charter. Sec. 31 and sec. 32, subsecs. (2), (7), and (32), ch. 366, Public-Local Laws 1939. See also Michie's N. C. Code of 1939, sec. 2787, subsecs. (7), (11), and (36).

No person has an absolute right to use the streets of a municipality in the operation of power-driven vehicles for hire. Such operation is a privilege which the municipality, under proper legislative authority, may grant or withhold. 37 Am. Jur., 535; *Commonwealth v. Rice,* 158 N. E., 797, 55 A. L. R., 1128; *Bunn v. City of Atlanta,* 19 S. E. (2d), 553; *S. v. Carter,* 205 N. C., 761, 172 S. E., 415; 1 Blashfield Cyc. Auto. L. & P., 67.

Generally, under the powers conferred upon them by their charters, or by general statute, municipal corporations may impose reasonable conditions upon the use of the streets by jitneys, taxicabs, motorbuses, and other motor vehicles operating as common carriers in the transportation of passengers or freight. 1 Blashfield Cyc. Auto. L. & P., 81, sec. 105 (see n. 19 for authorities).

This power exists not only under the licensing authority of the municipality but also under its recognized power to regulate the use of its streets in the interest of public safety and convenience, and it is generally held that a municipality in the exercise of this power may prohibit the use of the streets for private business or other purpose detrimental to the common good. 3 McQuillin Mun. Corp. (2d) Revised, 216, sec. 981; *S. v. Carter, supra;* 1 Blashfield Cyc. Auto. L. & P., 67; *New Orleans v. Calamari,* 91 So., 172, 22 A. L. R., 106; *Henderson v. Bluefield,* 42 A. L. R., 279, Anno. p. 282.

This applies to taxicab stands as well as to any other instances in which an individual is making a private use of highways, a use which would be subversive of the rights of other members of the public. And, "It cannot be doubted that the city council has the authority to abolish

taxicab stands from the streets." *Holmes v. R. R. Commission,* 197 Cal., 627, 242 Pac., 486; *New Orleans v. Calamari,* 22 A. L. R.— Rehearing, p. 112.

"It was never contemplated that the highways should form a part of the capital stock of common carriers engaged in the transportation of persons or property for profit, or that the use of the highways should be donated to them for that purpose.

"Clearly, these companies have no vested or inherent right in the highways, and their unrestrained use thereof is equivalent to an appropriation of public property for private use, and it is within the power of the legislature to prohibit this use or to prescribe the terms upon which it may be exercised." *Rio Bus Lines Co. v. Southern Bus Line Co.,* 272 S. W., 18.

Where the power to regulate, license, and control motor vehicles for hire is vested by the Legislature in the city council, there is a broad presumption in favor of the validity of an ordinance undertaking to exercise such power, and he who attacks it must show affirmatively that it is not expressly authorized by statute or that it is, as applied to him, unreasonable and oppressive. *Star Transp. Co. v. Mason City,* 192 N. W., 873; *New Orleans v. Calamari, supra.*

The municipality may name such terms and conditions as it sees fit to impose for the privilege of transacting such business, and the courts cannot hold such terms unreasonable, except for discrimination between persons in a like situation. The wisdom and expediency of the regulation rests alone with the lawmaking power. *Lawrence v. Nissen,* 173 N. C., 359, 91 S. E., 1036; *Turner v. New Bern,* 187 N. C., 541, 122 S. E., 469.

"The power of a court to declare an ordinance unreasonable and, therefore, void is practically restricted to cases in which the Legislature has enacted nothing on the subject-matter of the ordinance, and consequently to cases in which the ordinance was passed under the supposed power of the corporation merely. *Coal Float v. Jeffersonville,* 112 Ind., 15, 19. This distinction has been noted and observed in this State. *S. v. Ray,* 131 N. C., 814; *S. v. Thomas,* 118 N. C., 1221, 1225, 1226." *Lawrence v. Nissen, supra.*

Municipalities may classify persons according to their business and may apply different rules to different classes without violating constitutional rights, either under the State or Federal Constitution. The discriminations which invalidate an ordinance are those where persons engaged in the same business are subjected to different restrictions or are held entitled to different privileges under the same conditions.

"It is those restrictions imposed upon one class of persons engaged in a particular business which are not imposed upon others engaged in the

same business and under like conditions, that impair the equal right which all can claim in the enforcement of the laws." *Lawrence v. Nissen, supra; S. v. Kirkpatrick,* 179 N. C., 747, 103 S. E., 65; *Soon Hing v. Crowley,* 113 U. S., 709.

The fact that the operators of jitneys or taxicabs will suffer pecuniary injury from the enforcement of ordinances regulating such business, or that operators of such vehicles may be unable to comply with the terms of a regulatory ordinance, and so will be compelled to abandon operation of their vehicles, has no tendency to establish the unreasonableness or invalidity of the ordinance. *Auto Transit Co. v. City of Ft. Worth,* 182 S. W., 685. The rule is that the mere fact of pecuniary injury does not warrant the overthrow of legislation of a police character. *Grainger v. Douglas Park Jockey Club* (N. Y.), 147 Fed., 513, 8 Ann. Cas., 997; 1 Blashfield Cyc. Auto. L. & P., 86.

The ordinance here challenged applies to all taxicabs alike. It does not prohibit the use of the streets for the purpose of transporting, loading, and unloading of passengers and their baggage. It merely requires taxicab operators to use private property for parking, depot or terminal purposes. It is not subject to successful attack on the grounds that it is an unauthorized or an unreasonable exercise of legislative authority.

Indeed, there is substantial evidence in the record tending to show that taxicab operators have abused and misused the privilege heretofore accorded to them to use the streets for parking purposes. While we do not undertake to pass upon the merits of that controversy, the evidence was sufficient, at least, to warrant and command the attention of the city authorities. They have investigated and have acted to remedy an alleged condition which, if it in fact exists, tends to seriously disturb the peace and general welfare of the city. The discretion was theirs and they have acted within the authority vested in them.

But the appellee insists that injunctive relief is not the proper remedy. We agree. Ordinarily, injunction does not lie to restrain the enforcement of an alleged invalid ordinance. *Thompson v. Lumberton,* 182 N. C., 260, 108 S. E., 722, and cases cited; *Turner v. New Bern, supra; Flemming v. Asheville,* 205 N. C., 765, 172 S. E., 362.

Even so, there are more than one hundred taxi operators directly or indirectly affected by this action. Its dismissal will not end the controversy but, instead, will tend to prolong an unfortunately provocative situation. On the other hand, a decision now is final. Hence, we have exercised our discretionary right to express an opinion on the merits of the exceptive assignments of error as requested by plaintiffs. *Knight v. Little,* 217 N. C., 681, 9 S. E. (2d), 377, and cases cited.

The judgment below is

Affirmed.